IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA RICE, | ) | CASE NO. 1:08 CV 946 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Patricia Rice, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Rice had severe impairments consisting of status post left and right knee replacements, low back stenosis vs. sacrolitis [sic], and degenerative joint disease of the hips.[1] The ALJ made the following finding regarding Rice's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has retained the residual functional capacity to perform work at least at a sedentary exertional level, in function-by-function terms (SSR's 83-10 and

---

[1] Transcript ("Tr.") at 25.

96-8p), which would include occasionally lifting or carrying up to ten pounds, standing or walking for up to two hours and sitting for up to six hours per eight hour work day, with certain postural non-exertional restrictions associated with this level of exertion (as set forth in Exhibit 4F, page 3), to include limitations for only occasional (but not frequent) climbing, stooping, kneeling, crouching and crawling. The undersigned notes that this total work capacity was not prohibited or significantly altered by continuous 12-month periods of impairment exacerbation during the period of adjudication.[2]

The ALJ determined that the above-quoted residual functional capacity did not preclude Rice from performing her past relevant work.[3] Alternatively, based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Rice could perform.[4] He, therefore, found Rice not under a disability.[5]

Rice asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, she asserts two issues for decision in this case:

- Whether the ALJ gave appropriate weight to the opinions of plaintiff's treating physician, Dr. H. Allen, III; and

- Whether the ALJ erred in relying on the vocational expert's testimony that plaintiff could return to past relevant work and that she had other transferable skills to other sedentary work, where the ALJ's hypothetical question to the expert did not include all of the plaintiff's restrictions.

---

[2] *Id.* at 25-26.

[3] *Id.* at 32.

[4] *Id.* at 33.

[5] *Id.*

The Court concludes that substantial evidence supports the ALJ's decision not to give the opinion of Dr. Allen substantial weight and the ALJ's reliance on the vocational expert's testimony in deciding that Rice could return to her past relevant work.  Accordingly, the Commissioner's denial of the applications for disability insurance benefits and supplemental security income must be affirmed.

## Analysis

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[7] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    The ALJ's treatment of the opinion of H. Victor Allen, M.D.**

Rice challenges the ALJ's decision not to assign the assessment of Herbert V. Allen, M.D., her treating orthopaedist, significant weight.[9]

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[10]

---

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[9] Tr. at 31.

[10] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[11]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[12] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[13]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[14] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[15] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[16] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[17]

---

[11] *Id.*

[12] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[13] *Id.*

[14] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 729 (N.D. Ohio 2005); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[15] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[16] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[17] *Id.* at 535.

Dr. Allen's assessment is set out on a single page titled, "Clinical Assessment of Pain."[18] On this preprinted form, he circled three comments, which constitute his assessment:

- "Pain is present to such an extent as to be distracting to adequate performance of daily activities or work."

- Physical activity, such as walking, standing, bending, stooping, and moving of extremities greatly increases pain causing abandonment of tasks related to daily activities or work.

- Prescribed medication impacts the individual's work ability to the extent that medication will severely limit the patient's effectiveness due to distraction, in attention and drowsiness.[19]

Dr. Allen provided no further comment or elaboration in his own handwriting.[20]

Although this assessment is terse, the record does contain extensive treatment notes from Dr. Allen. He began treating her on April 9, 2004 for leg and hip pain that had persisted for a week.[21] He diagnosed acute sacroiliitis and gave her an injection in the right sacroiliac joint.[22] He continued to treat her for this condition through October of 2004,[23] at which time he noted that her back seemed to be under control.[24]

---

[18] Tr. at 191.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 139.

[22] *Id.* at 138-39.

[23] *Id.* at 135, 136, 176, 178, 179.

[24] *Id.* at 176.

Dr. Allen next saw Rice on February 3, 2005, at which time she reported that she had fallen 10 days before and had pain in her right hip, leg, and knee.[25] Dr. Allen diagnosed acute sacroiliitis and right hip bursitis and injected both her right sacroiliac joint and her right hip bursa.[26] Dr. Allen ordered knee x-rays.

Following review of the knee x-rays, Dr. Allen recommended a unicondylar knee replacement of both knees.[27] Rice underwent a partial right knee replacement on March 24, 2005,[28] and a left partial knee replacement on May 17, 2005.[29] Two weeks later, Dr. Allen reported that Rice was having no significant problems, not much pain, and that her wound was healing nicely without evidence of infection.[30] He gave the impression "doing well."[31] In a follow-up visit on July 20, 2005, Dr. Allen reported that Rice had good range of motion, that her wound had healed nicely without evidence of infection, and that "she is doing well."[32] The note of July 20, 2005 is Dr. Allen's last treatment note. His assessment

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 171.

[28] *Id.* at 194.

[29] *Id.* at 192.

[30] *Id.* at 167.

[31] *Id.*

[32] *Id.* at 166.

followed seven months later, on February 14, 2006.[33] The record contains no evidence of a contemporaneous office visit or examination.

Based on a careful review of Dr. Allen's records, the ALJ did not err in finding that the assessment done in February of 2006 has insufficient support in the objective medical evidence. First, as to the back condition, Dr. Allen began treating Rice in April of 2004, and his last note concerning that condition appears in February of 2005. Thereafter, he directs his notes exclusively to the impairments with her knees. The notes, therefore, do not document any debilitating effect from the back impairment that met the 12-month durational requirement or would support less than the already substantially diminished residual functional capacity finding..

Second, as to the knee impairments, the treatment notes show that the two knee replacement surgeries took place without complication and that Rice made a good recovery for those surgeries. Again, the notes do not support any disability meeting the 12-month durational requirement nor the severity of pain after May of 2005 consistent with the assessment done in February of 2006.

Third, Dr. Allen's pain assessment done in February of 2006 appears to be based on no contemporary physical examination. The last documented examination took place in July of 2005, at which time Dr. Allen reported more than satisfactory recovery from the knee replacement surgeries and without any notations of pain.

---

[33] *Id.* at 191.

The ALJ, therefore, did not err in deciding to assign Dr. Allen's February 2006 assessment no significant weight given the objective medical evidence in the record, notably that furnished by his treatment notes.

**3.     Reliance on the vocational expert's testimony**

Rice argues that the ALJ failed to incorporate in his hypothetical to the vocational expert limitations consistent with Dr. Allen's February 2006 pain assessment. She points to the testimony of the vocational expert, in response to questioning by the ALJ, that incorporating limitations consistent with Dr. Allen's assessment, all jobs previously identified in the vocational expert's testimony would be eliminated.[34]

As counsel for Rice observed at the oral argument, this argument rests heavily upon a determination that Dr. Allen's limitations should have been incorporated into the residual functional capacity finding. As explained above, the ALJ did not err by failing to incorporate those limitations. The ALJ, therefore, did not err in relying upon the vocational expert's testimony in response to hypothetical questions that did not incorporate those limitations.

Rice also argues that the hypotheticals posed to the vocational expert were nevertheless defective because they did not incorporate a limitation on kneeling, which was appropriate given Rice's two knee replacements. In fact, as Rice points out, the medical work-related profile incorporated into the hypotheticals provided for occasionally kneeling.[35] Although a limitation on a prohibition to kneeling may well have been appropriate given

---

[34] *Id.* at 307-08.

[35] *Id.* at 146.

-9-

Rice's surgeries, the Commissioner correctly responds that Rice's past relevant work as a supervisor of a phone unit, D.O.T. 235.137-010, provides for no kneeling.[36] The vocational expert's answer, therefore, that Rice could perform her past relevant work is consistent with the no kneeling limitation that Rice would have had incorporated into the hypothetical.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Rice had no disability. Accordingly, the decision of the Commissioner denying Rice disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.


Dated: June 25, 2009                               s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

---

[36] ECF # 20-3 at 4.